24CA0001 Parental Resp Conc NMD 12-26-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0001
Adams County District Court No. 21DR30567
Honorable Rayna Gokli McIntyre, Judge

---

In re the Parental Responsibilities Concerning N.M.D., a Child,

and Concerning Gary Lynn Duerksen,

Appellant,

and

Sara Rae Hanson,

Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 26, 2024

---

Barrow Brown Carrington, PLLC, Dorothy Walsh Ripka, Greenwood Village, Colorado, for Appellant

No Appearance for Appellee

¶ 1     Gary Lynn Duerksen (Duerksen) appeals the district court's order that allocated parental responsibilities concerning N.M.D. (the child).  We affirm.

I.     Background

¶ 2     The child was born in 2015.  Sara Rae Hanson (Hanson), the child's mother, identified Brian Jernigan (Jernigan) as the child's biological father.[1]  After the child's birth, Hanson executed an acknowledgement of paternity with Duerksen, and Duerksen was named as the father on the child's birth certificate.  Jernigan died two years later.

¶ 3     In 2021, Duerksen filed a petition for the allocation of parental responsibilities concerning the child.  Hanson disputed Duerksen's status as a legal parent, but the parties later stipulated that the acknowledgment of paternity established Duerksen as the legal father.  The parties then agreed to a temporary parenting time schedule that, over time, allowed Duerksen to exercise two non-overnight visits with the child each week — one for eight hours and the other for two to three hours.

---

[1] The permanent orders had a different spelling for Jernigan's name but we use the spelling as found in the rest of the record.

¶ 4　　During the proceedings, Dr. Edward Budd (Dr. Budd) was appointed as a parental responsibilities evaluator.  After his evaluation, Dr. Budd recommended that Hanson receive primary parenting time and that Duerksen exercise around "four contacts each month" with the child.  Dr. Budd also recommended that Hanson receive sole decision-making responsibility.  At Duerksen's request, the court appointed Dr. Carolyna Smiley-Márquez (Dr. Smiley-Márquez) as a supplemental parental responsibilities evaluator.  Dr. Smiley-Márquez similarly recommended limited parenting time for Duerksen, though she believed that he should have slightly more visits than Dr. Budd's recommendation and a few overnight visits during the year.  Dr. Smiley-Márquez also recommended that Duerksen have limited decision-making authority.

¶ 5　　After a hearing, the court allocated primary parenting time to Hanson, and it allowed Duerksen to exercise a non-overnight visit three days each month and an additional non-overnight visit during the months that have a fifth Saturday.  The court also allocated to Hanson sole decision-making responsibility.

¶ 6     Duerksen filed a motion for post-trial relief, and the court denied his request.

## II.     Standard of Review

¶ 7     The district court has discretion over the allocation of parental responsibilities, and, on review, we exercise every presumption in favor of upholding its decision. *In re Marriage of Collins*, 2023 COA 116M, ¶ 8 (parenting time); *In re Marriage of Morgan*, 2018 COA 116M, ¶ 23 (decision-making responsibility). We will not disturb the court's allocation absent a showing that the court abused its discretion. *Collins*, ¶ 8; *Morgan*, ¶ 26. A court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplies the law. *Collins*, ¶ 8. We therefore will affirm the court's allocation if the record supports it. *Id.*; *Morgan*, ¶ 26.

## III.    The Child's Biological Father

¶ 8     In the court's permanent orders, the court noted that Jernigen was the child's biological father. Duerksen contends that the court erred by making that finding. He argues that the parties' acknowledgment of paternity established a presumption of paternity in his favor, Jernigen never asserted a competing claim of paternity,

3

and no evidence from the hearing overcame the presumption in his favor concerning paternity. He thus argues that the court was not authorized to make a finding regarding Jernigen's biological paternity. We are unpersuaded.

¶ 9     Under the Uniform Parentage Act (UPA), a court can resolve competing presumptions of paternity and, when appropriate, determine the child's legal parents. *See* §§ 19-4-105, 19-4-107, C.R.S. 2024; *People in Interest of K.L.W.*, 2021 COA 56, ¶¶ 15, 19-21. A child can have only "two legal parents," and they are the ones that enjoy the rights and responsibilities of parenthood. *K.L.W.*, ¶¶ 21, 39.

¶ 10     Duerksen appears to suggest that by finding Jernigen was the child's biological father, the court made an improper paternity determination contrary to Duerksen's parental rights. But the court had already determined paternity, and nothing in the record indicates that the court's statement altered that determination. Before permanent orders, the court determined that the acknowledgment of paternity established Duerksen as the child's legal parent. *See* § 19-4-105(2)(a.5)(I), (2)(d). Then, in its permanent orders, the court said it would not revisit the paternity

4

determination, it again recognized Duerksen was the child's "legal [f]ather," and it allocated parental responsibilities between him and Hanson — the child's two legal parents. *See K.L.W.*, ¶¶ 21, 39. Even though the court noted Jernigen's biological connection to the child, it did not recognize him as a legal parent or otherwise alter Duerksen's parental rights under the UPA. *Cf. id.* at ¶ 17 (noting that a person's biological connection to the child does not conclusively establish parentage).

¶ 11 Duerksen further suggests that the court's comment about Jernigen was unnecessary and an abuse of the court's discretion. But he does not develop how or why the court's brief statement prejudiced him or affected his substantial rights as the child's legal parent. *See* C.A.R. 35(c) (We "may disregard any error or defect not affecting the substantial rights of the parties."); *People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (recognizing that an alleged error, without a valid allegation of prejudice, does not establish a ground for reversal on appeal).

¶ 12 To the extent Duerksen claims that the court's comment had no record support, Hanson testified that she had "no doubt" that Jernigen was the child's biological father, and the court credited her

5

testimony. We must defer to that finding. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (recognizing that the district court determines the credibility, weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence).

¶ 13    Duerksen therefore does not establish any basis to disturb the court's finding that Jernigen was the child's biological father.

### IV.    Allocation of Parental Responsibilities

¶ 14    Duerksen next contends that the district court's allocation of parenting time and decision-making responsibility was an abuse of discretion. We consider and reject his contentions.

### A.    Applicable Law

¶ 15    When allocating parenting time and decision-making responsibility, the court must focus on the child's best interests, giving paramount consideration to the child's safety, needs, and physical, mental, and emotional conditions. *See* §§ 14-10-123.4(1)(a), 14-10-124(1.5), (1.7), C.R.S. 2024; *Collins*, ¶ 7. In making its determination, the court must consider all relevant factors, including the best interests factors identified in section 14-10-124(1.5)(a) and (b). *See Collins*, ¶ 7; *Morgan*, ¶ 21.

## B.    Parenting Time

¶ 16    Duerksen argues that the court's allocation of parenting time significantly reduced the amount of parenting time he enjoyed under temporary orders and that such an allocation was contrary to the facts and the child's best interests. We discern no abuse of discretion.

¶ 17    The court made detailed findings concerning the child's best interests, considering each of the factors. In particular, the court found that Hanson and the child had a close relationship, the child lived primarily with Hanson her entire life, the child was well adjusted at Hanson's home, the household was stable, and the child had a supportive community surrounding her with Hanson. *See* § 14-10-124(1.5)(a)(III), (IV), (VII). The court acknowledged that, in the past, Hanson struggled with her mental and physical health and had placed her needs ahead of the child's needs, but it found that, presently, Hanson was more stable than ever and that she had brought stability to the child's life. *See* § 14-10-124(1.5)(a)(V), (XI).

¶ 18    By contrast, the court found that the child did not view Duerksen as a father figure, she was not entirely comfortable with him, Duerksen had not been a consistent presence in the child's

life, and the child had never lived with Duerksen or spent an overnight visit alone with him. *See* § 14-10-124(1.5)(a)(III), (VII). The court also found that Duerksen struggled with interpersonal skills, was socially isolated, and had poor social judgment. *See* § 14-10-124(1.5)(a)(III), (V). And it found that Duerksen was inexperienced with caring for the child, was not always cognizant of the child's needs, and struggled in his ability to relate to the child. *See* § 14-10-124(1.5)(a)(III). The court also found that the drive to Duerksen's home from Hanson's home was over an hour and that the child suffered from car sickness. The court reasoned that the physical distance between the parties' homes made it impractical to grant Duerksen parenting time during the school week. *See* § 14-10-124(1.5)(a)(VIII).

¶ 19    Hanson testified that the child had never lived with Duerksen or spent an overnight visit alone with him. She also testified that the child did not refer to Duerksen as her father and that she had never spent consistent time with him until this case. Dr. Budd reported that Duerksen's relationship with the child resembled more of a grandparent-grandchild relationship than a parent-child relationship. Dr. Budd also opined that Duerksen had "striking

8

interpersonal limitations," poor social judgment, and failed to understand the true nature of his relationship with the child. Dr. Smiley-Márquez reported similar concerns with Duerksen's social skills and his relationship with the child, and she noted that he had cared for the child only intermittently during her life. Dr. Budd further noted the challenges imposed by the physical distance between the parties, and he ultimately opined that "something like four contacts each month would be consistent with [the child's] needs and the nature of her relationship with [Duerksen]."

¶ 20    The court weighed these factors and the evidence, and found that while it was important for the child to spend time with Duerksen, overnight visits with him were not in the child's best interests. The court then allocated Duerksen three non-overnight weekend visits each month and an additional visit in the months that had a fifth Saturday.

¶ 21    Although, as Duerksen argues, the court allocated to him less parenting time than granted under the temporary parenting time orders, the court's allocation was based on the child's best interests, and the record supports its decision. *See Collins*, ¶¶ 8, 13.

¶ 22   Still, Duerksen highlights other evidence that he believes would support allowing him to exercise more time with the child. But it was within the district court's sound discretion to resolve the conflicting evidence and weigh the best interests factors. *See Collins*, ¶ 13; *Thorburn*, ¶ 49. We may not set aside the court's allocation based on those determinations when, as here, the record supports it. *See Collins*, ¶¶ 8, 13.

¶ 23   The court thus acted within its discretion and allocated parenting time based on the child's best interests.

### C.   Decision-Making Responsibility

¶ 24   Duerksen also argues that the court's allocation of sole decision-making responsibility to Hanson did not promote the child's best interests. We are unpersuaded.

¶ 25   Based on its consideration of the best interests factors, the court determined that allocating joint decision-making responsibility between the parties was not feasible and would not be successful. The court noted that the unbalanced and undisciplined power dynamic between the parties over the course of their relationship impeded their ability to make joint decisions for the child. *See* § 14-10-124(1.5)(b)(I)-(II). The court also noted the

10

parties would further struggle to make decisions cooperatively given their vastly different views on Duerksen's relationship with and connection to the child.  *See id.*

¶ 26 While Duerksen again highlights evidence that could have supported an allocation differently than that ordered by the court, the record supports the court's decision-making determination, and we will not disturb it.  *See Morgan*, ¶ 26; *Thorburn*, ¶ 49. Specifically, Hanson testified that she historically made the decisions concerning the child and that continuing her ability to do so served the child's best interests.  Hanson also testified that, in the past, when she tried to involve Duerksen in decisions, he was very pushy and tried to impose his will on her.  She also described that Duerksen would belittle her and was dismissive of her feelings and opinions.

¶ 27 Dr. Budd reported that while there were times in the past when the parties could communicate amicably about the child's needs, they are unable to do so now in light of their continued conflict.  Dr. Budd also observed that the parties "never really made joint parenting decisions," did not have similar values, approached life very differently, and were not mutually supportive.  Dr. Budd

reported that Hanson historically made decisions concerning the child, and he opined that imposing joint decision-making responsibility now "would cause problems without solving any."

¶ 28　　Although Duerksen disagrees with the court's allocation, given the evidence, the court acted within its discretion to allocate sole decision-making responsibility to Hanson.

## V.　Conclusion

¶ 29　　The judgment is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.